**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN MARC DESMARAT,

                              Plaintiff,

        - v -                                                Civ. No. 9:08-CV-977
                                                                      (DNH/RFT)

DALE ARTUS, *Superintendent, Clinton Correctional*
*Facility*; LINDA TURNER, *Deputy Superintendent/Program,*
*Clinton Correctional Facility*; MICHAEL R. VINCENT,
*Correction Officer, Clinton Correctional Facility*; and
JOHN DOE, *APPU Inmate/Law Library Clerk,*
*Clinton Correctional Facility*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JEAN MARC DESMARAT
Plaintiff, *Pro se*
03-A-6318
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. ANDREW M. CUOMO                    CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York     Assistant Attorney General
*Attorney for Defendants*
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Jean Marc Desmarat brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging that on May 4, 2005, his legal documents were lost after he turned them over to

Defendant Michael Vincent for photocopying in accordance with Clinton Correctional Facility rules

for photocopying.  Dkt. No. 1, Compl.  Plaintiff alleges he was denied access to the courts and his

legal actions were prejudiced because his legal documents were lost. *Id.* at pp. 7-10.  On January

15, 2009, Defendants filed a Motion to Dismiss the Complaint on the ground that Plaintiff failed to

comply with the applicable statute of limitations ("SOL"), Dkt. No. 17, which Plaintiff opposes, Dkt.

Nos. 18 & 21.[1]  Both parties submitted matters outside the pleadings in support of their respective

positions on Defendants' Motion, and therefore, the Court issued an Order, dated July 22, 2009,

giving notice that it would consider Defendants' Motion as one for Summary Judgment, and

directing the parties to file Statements of Material Facts pursuant to Local Rule 7.1.  We further

afforded the parties an opportunity to file any additional material relevant to the sole issue of

whether the Complaint was filed within the applicable SOL period.  Dkt. No. 29.

On August 4, 2009, Defendants submitted a 7.1 Statement, Dkt. No. 30; on August 31, 2009,

Desmarat filed his own 7.1 Statement in response, Dkt. No. 33.  Beyond the documents originally

attached to Defendants' Motion and Plaintiff's Response, neither party has submitted additional

documentary evidence for the Court to consider.

For the reasons that follow, it is recommended that the Defendants' Motion for Summary

Judgment be **DENIED**.

## I.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of

---

[1] In his initial Response to Defendants' Motion, Plaintiff asserted that Defendants' failure to provide a "concluding/signature page" rendered the Defendants' Motion "procedurally defective." Dkt. No. 18. Defendants' letter in reply to Plaintiff's Response indicated that Plaintiff was not served with the last page of their Memorandum of Law due to a clerical mistake, and that a complete and correct copy of the Memorandum of Law was re-sent to Plaintiff.  Dkt. No. 19.  At Defendants' request, the District Court set a new return date and deadline for Plaintiff to respond to the substance of Defendants' Motion.  Dkt. No. 20.

law." The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  Statute of Limitations

Defendants' sole argument in support of their Motion is that Plaintiff's claim is barred by the applicable SOL. Dkt. No. 17, Defs.' Mem. of Law. When entertaining a § 1983 action, federal courts apply the SOL for personal injury actions from the state in which they sit. *Owens v. Okure*, 488 U.S. 235, 251 (1989). In New York State, a three-year SOL applies to § 1983 claims. These claims generally accrue when a plaintiff "knows or has reason to know of the injury which is the basis of his action." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). Thus, courts must focus on when a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *Singleton v. City of New York*, 632 F.2d 185, 192 (2d Cir. 1980).

In this case, Defendants assert that the SOL accrued on May 4, 2005, the date Plaintiff's legal materials were allegedly lost. Although Plaintiff does not assert the exact date on which he learned that his legal materials were lost, he has accepted Defendants accrual date of May 4, 2005, and

therefore, we will also accept that date as a starting point for assessing whether the Complaint was timely filed. Defendants argue that the three-year SOL expired on May 4, 2008, and therefore, Plaintiff's undated Complaint, post-marked September 11, 2008, was untimely filed.[2] Dkt. No. 17, Defs.' Mem. of Law at pp. 2-3.

In Response to Defendants' Motion, Plaintiff alleges that on April 22, 2008, several days before the SOL period ended, he turned over his Complaint to Corrections Officer ("C.O.") Giguere, the Law Library Supervisor at Clinton Correctional Facility ("Clinton"), whom Plaintiff argues should have mailed his Complaint to the Court via certified postal service on that date. Dkt. No. 21, Pl.'s Resp. at p. 2. Plaintiff asserts that instead of mailing the Complaint, Giguere "withheld [his] legal mail for over three (3) months" for reasons that remain unexplained. *Id.* As Defendants point out, Plaintiff's argument rests on the "prison mailbox rule," pursuant to which a prisoner is deemed to have filed his legal papers on the date he gave them to prison officials for mailing. *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citations omitted); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (applying rule to § 1983 complaints filed by state prisoners). Plaintiff has submitted copies of the following documents in support of his opposition: (1) an Affidavit of Service, which was notarized by Giguere on April 22, 2008; (2) a "Disbursement or Refund Request" form that has been redacted so as to make invisible the date it was approved; and (3) a United States Postal Service Certified Mail Receipt, dated September 15, 2008. Dkt. No. 21, Pl.'s Resp., Exs. A & B.

In Reply to Plaintiff's Response, Defendants offer an Affidavit from Scott Giguere in which he acknowledges signing Plaintiff's Disbursement or Refund Request form on April 22, 2008. Dkt.

---

[2] An Affidavit of Service is attached to Plaintiff's undated Complaint. That document contains a service date of May 4, 2005, and was notarized on May 16, 2005. However, the list of documents described as served in that Affidavit does not include Plaintiff's current Complaint.

No. 26, Defs.' Reply, Scott Giguere Aff., dated Mar. 26, 2009, at ¶ 5.  Attached to Giguere's

Affidavit is an un-redacted copy of the Disbursement or Refund Request form, which shows that

both Plaintiff and Giguere signed the form on April 22, 2008.  *Id.*, Ex. A.  Giguere also recognizes

that he notarized Plaintiff's Affidavit of Service on April 22, 2008, but states that "[a]lthough [he]

notarized inmate Desmarat's signature on the affidavit of service, that does not mean that [he] swore

to the truth of the statements Desmarat wrote in the document.  As a notary, all [he] did was swear

that inmate Desmarat's signature was authentic."  *Id.* at ¶¶ 6-7.  Furthermore, Giguere asserts that

he does not accept inmate mail "because it is not one of [his] job duties," and in order "to avoid

being involved in controversies such as the one here about whether Desmarat's legal mail was or

should have been mailed on a certain date."  *Id.* at ¶ 9.  To emphasize that point, Giguere asserts that

"there is a sign posted in the Law Library where [he sits] stating that [he is] not allowed to accept

inmate mail for any reason."  *Id.* at ¶ 10.  Thus, Giguere avers that after he signed the Disbursement

Form and notarized the Affidavit of Service, he gave the papers back to Plaintiff, and that it was

Plaintiff's responsibility to put his outgoing mail into one of the mail boxes, which "are located on

every cell block at Clinton."  *Id.* at ¶ 12.

Defendants have also submitted an Affidavit from Margaret Livsey, Mail and Supply Clerk

in the Correspondence Unit at Clinton, who affirms her full familiarity with how outgoing inmate

mail is processed at Clinton.  Dkt. No. 24, Margaret Livsey Aff., dated Mar. 19, 2009, at ¶¶ 1& 3.

Livsey describes that process as follows:

> [i]f an inmate does not have enough postage affixed to his envelope or package, a
> correctional officer must sign a [Disbursement or Refund Request form] so the
> inmate can send out his mail. . . . The officer gives the signed form to the inmate.
> It is then the inmate's responsibility to deposit the mail in the mail box or mail bag
> for inmate mail which is located on the housing block where the inmate resides.  The
> mail in each of the blocks is picked up every morning by an inmate under the

supervision of a correctional officer and delivered to the Correspondence Unit that same day.  The Correspondence Unit processes outgoing inmate mail the same day it is received.  This means the mail is sent out to the Post Office the same day or, if there is something preventing the mail from going out, it is returned to the inmate.  Some inmate mail is handled differently such as certified mail.  When the Correspondence Unit receives inmate mail for certified mailing, the inmate's name, DIN number, certified slip number and the date the mail is sent out is noted in a log book maintained in the ordinary course of business by a Correspondence Clerk.

\* \* \*

In the case of an inmate using a disbursement form for postage and before making the log entry, a Keyboard Clerk checks the balance in the inmate's account to make sure there are sufficient funds to pay for the cost of certified mail.  If there are, the clerk will write 'ok' in the upper right hand corner of the disbursement form and the piece of mail will then be sent out to the Post Office with the correct postage affixed.  In the meantime, the disbursement form is sent to the Facility Business Office to make the actual deduction from the inmate's account to pay the cost of the certified mailing.  An official in the Business Office signs or initials and dates the form when this is done and returns it to the Correspondence Unit.

Livsey Aff. at ¶¶ 4-10 & 13-14.

Attached to Livsey's Affidavit is a copy of a page from the log book, which has Plaintiff's name on it and indicates that the Correspondence Unit received his certified mailing, identified by receipt number 7007 1490 0000 9969 4867, the same number shown on the copy of the Certified Mail Receipt provided in Plaintiff's Response, on September 11, 2008.  *Id.*, Ex A, Log Book, entry dated Sept. 11, 2008; Pl.'s Resp., Ex. A.  The copied page from the log book also indicates that the delivery receipt was returned on September 18, 2008.  Livsey Aff. at ¶ 12 & Ex. A.  Livsey further notes that the Disbursement Form has an "ok" notation on its upper-right hand corner, and is marked "sent 9-11-08."  *Id.* at ¶ 17.  Thus, Livsey concludes, Plaintiff must have deposited his legal mail in the mailbox on or before September 11, 2008, the date the Correspondence Unit received and processed his mail by affixing the correct postage and forwarding it to the post office.  *Id.* at ¶ 18.

Plaintiff has an altogether different explanation of the protocol for sending outgoing legal

mail at Clinton. According to Plaintiff and three other inmates who have provided identical Affidavits in support of his opposition,[3] because his legal mail was enclosed in an oversized manila envelope, pursuant to Department of Correctional Services ("DOCS") Directive #4422, III(B)(8), he was required to have such envelope inspected by a DOCS staff member whose duty it was to forward the mail to the Correspondence Unit. Dkt. No. 28, Pl.'s Sur-Reply at pp. 2-3 & Attach. Affs. of Kevin Goode, Jeffrey Stokes, & Perez Aughtry, all dated Apr. 7, 2009. While not provided by either party, the Court takes judicial notice of DOCS Directive #4422, entitled "Inmate Correspondence Program," available on the DOCS website, which states, in pertinent part:

> Oversize correspondence, defined as mail which cannot be enclosed in a standard business envelope, shall be inspected in the presence of the inmate by a designated security staff person for the presence of contraband. The Superintendent may designate block, law library, package room, correspondence unit, "legal mail," "notary public," or other staff to conduct these inspections. Inspections shall be complete as soon as possible, but not later than 24 hours after request. Legitimate correspondence may be sealed by the inmate after inspection, and the inspecting staff person shall then sign the back of the envelope or parcel certifying inspection, *and promptly deliver or forward the mail to the correspondence unit or business office as appropriate*.

DOCS Directive #4422 at Part III (B)(8), *available at* www.docs.state.ny.us/Directives/4422.pdf (last visited Sept. 16, 2009) (emphasis added).

Plaintiff alleges that in accordance with the procedure outlined in DOCS Directive #4422, he submitted his legal mail to C.O. Giguere, whom Plaintiff asserts should have forwarded the envelope to the Correspondence Unit. Dkt. No. 21, Jean Marc Desmarat Aff., dated Mar. 10, 2009, at ¶¶ 3-6.

Plaintiff further alleges that "when [he] received no acknowledgment from the District Court, [he] made a formal inquiry to the facility Superintendent. The same mentioned letter [dated July 25, 2008] was referred to M. Patnode, Deputy Superintendent/Program." Dkt. No. 33, Pl.'s Resp. to

---

[3] The three Affidavits differ only with respect to the signatures affixed to them. *See* Dkt. No. 28, Attach. Affs.

Defs. 7.1 Statement at ¶ 19.  Plaintiff did not provide the Court with a copy of this letter, but indicates that it is "within the facility's file."  *Id.*  Plaintiff avers that Patnode sent him a response that addressed an issue he had concerning legal mail he filed before the Court of Claims, but did not address the mailing he alleges to have sent to this Court.  *Id.* at ¶¶ 20 & 22.  Plaintiff also asserts that on July 31, 2008,[4] he "made a further inquiry to Hon. Lawrence Baerman, Clerk," but again, he did not provide a copy of such correspondence.  *Id.* at ¶ 21.  Plaintiff alleges he received a response from the Clerk, dated August 26, 2008, advising him "that our records do not indicate an action being filed by you in this district;" Plaintiff does not include a copy of that correspondence either.  *Id.* at ¶ 23.  Defendants have not submitted any documentary evidence or affidavits to refute these allegations.

There are several evidentiary holes in the record before us precluding a recommendation in favor of granting Defendants' Motion.  Plaintiff's allegation is that pursuant to DOCS Directive #2244, he submitted his legal mail to Giguere on April 22, 2008, whose duty it was to file the mail with the Correspondence Unit, but that Giguere held the mail for three months before submitting it to the Correspondence Unit in September 2008.  Defendants have not produced any evidence that the procedure outlined in DOCS Directive #2244 was somehow inapplicable to the circumstances alleged in this case.  In that respect, there has been no evidence presented as to whether or not Giguere was a staff member "designated" to inspect large mail parcels pursuant to DOCS Directive #2244, although Giguere maintains that it is not one of his job duties to "accept inmate mail." Giguere Aff. at ¶ 9.  Finally, while Defendants intimate a delay may have ensued due to lack of available funding, there is no evidence as to whether Plaintiff had sufficient funds in his inmate

---

[4] Plaintiff states he sent a letter to Mr. Baerman on July 31, 2009, however, it is clear to the Court from context that 2008 was the date Plaintiff intended to reference.

account to pay for the mailing of his Compliant in April 2008.

Considering all the evidence presented before the Court, and construing such evidence in a light most favorable to Plaintiff, we believe a question of fact exists as to the reason for the three-month delay of Plaintiff's mailing.  Giguere has sworn that he notarized Plaintiff's mailing and returned it to him immediately thereafter; Plaintiff swears he entrusted his mail to Giguere pursuant to DOCS Directive #2244.  The Court will not make a credibility determination regarding these sworn statements, which is a duty reserved solely for the trier of fact.

Therefore, it is recommended that Defendants' Motion be **denied**.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion (Dkt. No. 17) be **DENIED** and Defendants be directed to file a response to Plaintiff's Complaint in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   September 16, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge