**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEAN MARC DESMARAT,

Plaintiff,

     - v -                            Civ. No. 9:08-CV-977
                                         (DNH/RFT)

DALE ARTUS, *Superintendent, Clinton Corr. Facility*;
LINDA TURNER, *Deputy Superintendent/Program,*
*Clinton Corr. Facility*; MICHAEL R. VINCENT, *Corr.*
*Officer, Clinton Corr. Facility*; JOHN DOE, *APPU*
*Inmate/Law Library Clerk, Clinton Corr. Facility*,

Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

JEAN MARC DESMARAT
03-A-6318
Plaintiff, *Pro Se*
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN          CHRISTOPHER W. HALL, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>REPORT-RECOMMENDATION and ORDER</u>

*Pro se* Plaintiff Jean Marc Desmarat brings this civil rights action, pursuant to 42 U.S.C. §

1983, alleging principally that Defendants violated his constitutionally protected right to access the

courts. Dkt. No. 1, Compl. Specifically, Plaintiff asserts that the photocopying procedure at Clinton

was deficient and caused the loss of integral court documents that he had submitted to Defendant

Michael Vincent, per the facility's procedure, for photocopying. Without those documents, Plaintiff

claims that he was unable to successfully lodge a collateral attack of his state criminal conviction.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Federal Rule

of Civil Procedure 56, Dkt. No. 50, which Plaintiff opposes, Dkt. No. 60.  For the reasons that

follow, it is recommended that Defendants' Motion be **granted** and this action be **dismissed**.

## I. BACKGROUND

The following material facts are not in dispute.[1]  At all times relevant to the claims included

in the Complaint, Plaintiff was in the custody of the New York State Department of Correctional

Services (DOCS) and was housed at Clinton Correctional Facility.  Dkt. No. 50-1, Defs.' Statement

of Material Facts [hereinafter "Defs.' 7.1 Statement"] at ¶ 1.

On May 4, 2005, Plaintiff was in need of the facility's photocopying services.  On that

particular date, Defendant Michael Vincent was supervising the unit that provided inmates with

photocopying services.  *Id.* at ¶¶ 2-3.  Plaintiff explained to Defendant Vincent that he needed to

photocopy documents for a court deadline, but lacked sufficient funds in his inmate account to pay

the costs associated with copying 172 pages.  *Id.* at ¶ 4.  Defendant Vincent gave Plaintiff a form

to fill out so that he could get his documents copied immediately and have his account billed at a

later date when Plaintiff had the funds to cover the $17.20 charge.  *Id.* at ¶ 5. Plaintiff alleges that

during this encounter, Vincent, whom Plaintiff describes as "a very humble" and "well-mannered"

---

[1] We applaud Plaintiff for filing Opposition papers that are in general compliance with this District's Local Rules of Practice.  In those papers, Plaintiff clearly indicates those facts submitted by Defendants that he agrees with, and provides sufficient reason for many he denies.  Plaintiff admits to twenty-four of the forty paragraphs contained in Defendants' Statement of Material Facts.  *Compare* Dkt. No. 50-1, Defs.' Statement of Material Facts *with* Dkt. No. 60, Pl.'s Resp. and Obj. to Defs.' [Statement of Material Facts].  Where all parties agree on the material facts, the Court will only cite to Defendants' Statement of Material Facts.  There were a few instances, however, where Plaintiff neither admitted nor specifically denied the Defendants' recitation of a certain fact.  The Local Rules of this District require the non-movant to admit or deny "each of the movant's assertions . . . . [and e]ach denial shall set forth a specific citation to the record where the factual issue arises. . . . The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original).  In the interests of fairness, where Plaintiff has failed to specifically admit/deny a fact stated by the Defendants, the Court will only accept as true those facts that are provable and not contradicted by the submitted record.

person, told Plaintiff to stop filing grievances about the law library.  *Id*. at ¶¶ 6 & 8.  Plaintiff handed over his documents to Vincent, and no further dialogue was exchanged on that date.  *Id*. at ¶ 9.

Plaintiff asserts that his legal documents were never returned to him.  Compl. at p 7.  These documents were to be used in Plaintiff's appeal of the denial of his state "440" motion regarding his state criminal conviction for homicide.[2]  Defs.' 7.1 Statement at ¶¶ 10-11.  Plaintiff submitted the original 440 motion to the trial court on June 18, 2004.[3]  *Id*. at ¶ 14.  With the exception of roughly five pages, all of the 172 pages submitted to Defendant Vincent were also on file with the state trial court that had denied Plaintiff's 440 motion.[4]  *Id*. at ¶¶ 15, 17, & 18.  The documents that were permanently lost were:  1) a two-page affidavit, and 2) a three-page fingerprint comparison test report.  *Id*. at ¶¶ 17-19.  The two-page affidavit was that of a maintenance worker and served to contradict the testimony a detective gave at Plaintiff's state criminal trial regarding whether the hotel surveillance camera, where the homicide occurred, had been recording.  *Id*. at ¶ 17.  As to the second document, there is conflicting evidence as to whether this was a two-page or three-page report.  The first two pages of the report indicate that it was only a two-page document, however, Plaintiff contends that a detective testified at his state criminal trial that the document was three pages long.  *Id*. at ¶ 20.  The third page of the fingerprint report is alleged to contain analysis of a civilian witness

---

[2] On September 19, 2003, following a jury trial, Plaintiff was convicted of intentional murder in the second degree.  Upon information and belief, when noting the "440" motion, Plaintiff is referencing a motion he filed in state court seeking to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10.  *See Desmarat v. Artus*, 2009 WL 2867900, at *3 (E.D.N.Y. Sept. 3, 2009) (reviewing Desmarat's federal collateral attack of his state homicide conviction and reviewing the relevant underlying procedural history).

[3] Upon information and belief, that 440 motion was summarily denied in a written decision, dated April 1, 2005, one month prior to Plaintiff's encounter with Defendant Vincent.  *Desmarat v. Artus*, 2009 WL 2867900, at *3.

[4] Plaintiff failed to admit or deny the Defendants' assertion that all but five of the 172 pages were on file with the trial court.  Defendants' assertion is supported by the Plaintiff's testimony before trial.  *See* Dkt. Nos. 50-3, Christopher W. Hall, Esq., Affirm., dated July 22, 2010, Ex. A, Pl.'s Dep., dated Jan. 20, 2010 (docketed at Dkt. No. 50-4, 50-5, & 50-6), at pp. 39-40 & 44.

who testified against Plaintiff at the state criminal trial; Plaintiff claims the report revealed that this witness's fingerprints were found at the crime scene and on the surveillance camera in the hotel lobby.  *Id*. at ¶ 19.[5]  Instead of appealing the denial of his 440 motion, Plaintiff asked the trial court to renew and reargue the motion.  *Id*. at ¶ 22.  In that motion, Plaintiff described the missing documents and its exculpatory impact.  *Id*. at ¶ 24.  That motion was denied.  *Id*. at ¶ 23.[6]  Plaintiff maintains that if he had the missing documents, his 440 motion would have been granted and he would be released from DOCS' custody.  *Id*. at ¶ 26.

Plaintiff testified at his deposition that he included Defendant Dale Artus in this lawsuit because as the superintendent, "[h]e's the boss of all subordinates in the facility."  *Id*. at ¶ 27.[7]  He further indicated that Defendant Artus was aware of the purported inadequacy with the facility's photocopying procedure and failed to change the policy.  *Id*. at ¶ 28.  With regard to Defendant Linda Turner, Plaintiff also pointed to her position of authority and her failure to remedy or change the photocopying procedure even after having been informed of its inadequacy.  *Id*. at ¶¶ 29 & 31.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[5] Plaintiff failed to admit or deny the Defendants' assertion regarding what the third page of the fingerprint report would have shown.  This omission is peculiar given that his testimony before trial not only directly supports the Defendants' recitation, but appears to be the sole source for this explanation.  Pl.'s Dep. at pp. 52-53.

[6] Plaintiff failed to admit or deny the Defendants' assertions regarding the filing and denial of a motion to renew and reargue the 440 motion.  Defendants' assertions are not only supported by Plaintiff's testimony before trial, but also by Plaintiff's Exhibit attached to his Opposition.  Pl.'s Dep. at pp. 56-57; Pl.'s Opp'n at pp. 25-26 (citation is to the Court's electronic case management page assignment); *see also Desmarat v. Artus*, 2009 WL 2867900, at *3.

[7] It is not clear why Plaintiff failed to specifically admit/deny this quote, which is taken directly from his testimony before trial.  Pl.'s Dep. at p. 88.

The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier*

-5-

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  First Amendment Claims

In his Complaint, Plaintiff asserts that the inadequate photocopying services provided to inmates at Clinton were inadequate and infringed upon his constitutionally protected right to access the courts.  *See generally* Compl.  Plaintiff proffers that Clinton should allow inmates to directly access a photocopier in the law library instead of mandating that inmates surrender control and custody over their legal documents.  Additionally, though not included in his Complaint, Plaintiff accuses Defendant Vincent of deliberately destroying his legal documents as retaliation for Plaintiff's complaints regarding the law library.  The Court begins with consideration of the latter claim against Defendant Vincent.

### 1.  Retaliation

At his examination before trial, Plaintiff, for the first time, raised retaliation as an explanation for the loss of the documents.  Dkt. No. 50-3, Christopher W. Hall, Esq., Affirm., dated July 22,

2010, Ex. A, Pl.'s Dep., dated Jan. 20, 2010 (docketed at Dkt. Nos. 50-4, 50-5, & 50-6), at pp. 22-23 & 118-20.   Specifically, Plaintiff accused Defendant Vincent of deliberately destroying his legal materials as retaliation for Plaintiff filing grievances.   Though not included in his Complaint, Plaintiff similarly raises this claim in his papers submitted in opposition to Defendants' Motion. Dkt. No. 60, Pl.'s Mem. of Law, at pp. 1 & 3.   The Court notes that at no point has Plaintiff sought permission from the Court to amend his Complaint to add a cause of action for retaliation and, furthermore, opposition papers are not the proper vehicle to instill new causes of action.   *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)); *Harvey v. New York City Police Dep't*, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, . . . the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims.") (citation omitted).   While a complaint need not correctly plead every legal theory supporting a claim, "a plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.   Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts . . . have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment."   *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 406 (S.D.N.Y. 2006) (citations omitted).

Conspicuously absent from the Complaint are any of the underlying facts that would have

alerted Defendants and this Court to the notion that a potential retaliation claim is being pursued.

Indeed, it appears the first time these facts come to light is during Plaintiff's deposition, which was

conducted more than a year after Plaintiff initiated this action.   Though *pro se* litigants are not

immune from following procedural rules, the Court is mindful of the Second Circuit's penchant for

leniency with regard to *pro se* litigants as well as their preference that such litigants be afforded

opportunities to amend prior to outright dismissal.  *Burgos v. Hopkins*, 14 F.3d at 790 ("[W]e read

[a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest

arguments that they suggest."); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it

for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the

court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims

set out in his pleadings.").   Nevertheless, as explained below, because the bare facts provided by

Plaintiff do not assert a valid retaliation claim, amendment at this late stage would not only be

prejudicial to Defendants, but, more importantly, would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99,

112 (2d Cir. 2000) (finding leave to replead would be futile where the complaint, even when read

liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully

pleaded and that she should therefore be given a chance to reframe").

      The Second Circuit has made clear that an inmate has a substantive due process right not to

be subjected to retaliation for the exercise of a constitutional right, such as petitioning the

government for redress of grievances.  *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995);

*Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988).  Claims of retaliation, like those asserted by

Plaintiff, find its roots in the First Amendment.  Central to such claims is the notion that in a prison

setting, corrections officials may not take actions which would have a chilling effect upon an

inmate's exercise of First Amendment rights.  *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity.  *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).  Because of the relative ease with which claims of retaliation can be invoked, courts are advised to examine such claims "with skepticism and particular care."  *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d at 491 ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

During his deposition, Plaintiff described the brief encounter between him and Defendant Vincent on May 4, 2005.  *See* Pl.'s Dep. at pp. 20-25.  Plaintiff described Vincent as humbled and well-mannered and acknowledged that Vincent provided Plaintiff with the opportunity to obtain immediate photocopies, despite a lack of available funding in his account.  This "simple" encounter took an "unusual" turn when, at some point, Vincent told Plaintiff to stop filing grievances regarding access to the law library.  *Id*. at pp. 22-23.  Though Vincent stated this while remaining "humble and well-mannered," given his level of authority, Plaintiff felt intimidated and took the statement to be an order directing him to stop filing grievances.  *Id*. at p. 24

Even taking Plaintiff's chronicle of the encounter as truth, this is hardly a case of retaliation. First, Plaintiff has failed to specifically identify the constitutionally protected activity he engaged in that establishes a connection to a motive for Vincent to retaliate. While Vincent purportedly tells him to "stop filing grievances," no underlying facts have been presented regarding these grievances to allow this Court to assess whether Plaintiff's exercise of a protected right was the motivating factor behind Vincent's purported retaliation. Indeed, nothing about the encounter as relayed by Plaintiff strikes this Court as acrimonious or rancorous, and Vincent's demeanor, as described by Plaintiff, and willingness to help Plaintiff belies the notion that he deliberately destroyed Plaintiff's legal papers as retaliation.

Thus, we find that despite Plaintiff's failure to follow the proper procedure with regard to amending his Complaint, such amendment would nevertheless be futile as no retaliation claim has been properly presented and supported.

### 2.  Access to Courts

Plaintiff's First Amendment access to courts claim is truly the crux of his Complaint. On the one hand, Plaintiff alleges that Defendant Vincent denied him access to the courts when he failed to return to Plaintiff all of the documents submitted for photocopying. On the other hand, he includes Defendants Artus and Turner in this litigation because Plaintiff's baseline criticism is of Clinton's photocopying procedure, which he believes is inadequate. Plaintiff takes great umbrage with the procedure that requires him to surrender physical custody over his legal documents in order to have photocopies provided. He believes, instead, that to comply with the Constitution, he should have direct access to photocopying services. In this regard, it is Plaintiff's theory that the inadequate photocopying procedure at Clinton interfered with his access to the courts.

Prisoners have a First Amendment right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977).  This right gives rise to a number of derivative rights, including the right to either "adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  Prisoners do not, however, have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Instead, "meaningful access to the courts is the touchstone." *Id.* (quoting *Bounds v. Smith*, 430 U.S. at 823). In this regard, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. at 825). While states must provide, at state expense, certain materials, such as "paper and pen to draft legal documents[,] with notarial services to authenticate them, and with stamps to mail them[,]" economic factors may nevertheless be considered when "choosing the methods used to provide meaningful access." *Bounds v. Smith*, 430 U.S. at 825.  A state need not "provide the *best* manner of access, nor is it obligated to equalize the financial resources of each of its inmates. . . . So long as the State's procedure's [sic] meet constitutional minima, the courts should not second-guess them." *Pino v. Dalsheim*, 558 F. Supp. 673, 675 (S.D.N.Y. 1983) (emphasis in original).

A prisoner who raises denial of access to courts must "demonstrate that the alleged shortcomings in the library or legal assistance hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. at 351.  In other words, the prisoner must show actual injury. *Id.* at 349; *see also Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. at 351, for the proposition that the inmate must show "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim – for example, by demonstrating that

*-11-*

he has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality").

We can easily disabuse Plaintiff of the notion that the photocopying procedure in place at Clinton, by itself, violate Plaintiff's First Amendment right of access to courts. As noted above, the photocopying services are merely the means by which the state may opt to ensure that prisoners have adequate and meaningful access to the courts. The fact that Clinton, and probably numerous other facilities,[8] have opted to oversee such services rather than allow an inmate unfettered access to a photocopier does not diminish nor render unconstitutional the efforts the facility has taken to ensure adequate and meaningful access. *Collins v. Goord*, 438 F. Supp. 2d 399, 416 (S.D.N.Y. 2006) (citing cases for the proposition that "an inmate has no constitutional right to free copies and prison regulations that limit access to such copies are reasonably related to penological interests" (internal quotation marks and citations omittted)). Nothing in the Constitution nor Supreme Court jurisprudence mandates that inmates be able to photocopy documents at will; in fact, the Supreme Court acknowledged that there is no one-size fits all approach when it comes to providing the means by which prison facilities ensure that inmates have meaningful and adequate access to the courts. *See Bounds v. Smith*, 430 U.S. at 832 ("[A] legal access program need not include any particular element we have discussed, and we encourage local experimentation."); *Dugar v. Coughlin*, 613 F. Supp. 849 (S.D.N.Y. 1985) (citing *Bounds* for the proposition that the state may balance "prisoners' rights with the legitimate interests of the states, including economic concerns."). Because the photocopying procedure utilized at Clinton has not been shown to be inadequate, there is no basis

---

[8] Plaintiff testified at his deposition that other inmates informed him that photocopying procedure is different at other facilities. Pl.'s Dep. at pp. 31-32. He admitted, however, that the two facilities he had been housed at, Clinton and Downstate, had identical an procedure, and that such procedure complies with DOCS Directive 4483. *Id*. at pp. 29-33.

to hold Defendants Artus and Turner liable as their sole connection to this lawsuit stems from their purported failure to change the policy. *See* Pl.'s Dep. at pp. 88 & 107-14 (explaining his bases for including Defendants Artus and Turner in this lawsuit).

What remains then is Plaintiff's First Amendment denial of access claim against Defendant Vincent, which seems to have evolved during the pendency of this litigation from an allegation that documents were lost due to the inadequate procedure, to an accusation of deliberate destruction of those documents.   To the extent Plaintiff's Complaint is read to raise injuries resulting from Defendant Vincent's negligent handling of Plaintiff's legal papers, such allegations fail because though § 1983 has no state-of-mind element, negligent conduct is nevertheless not actionable under several constitutional provisions, such as, for example, the First, Eighth, and Fourteenth Amendments. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." (internal quotation marks and citations omitted)); *Daniels v. Williams*, 474 U.S. 327, 328-30 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 498 (N.D.N.Y. 2009) (finding defendant's loss of plaintiff's legal documents amounted to negligence, which is not actionable under the First Amendment); *see also Hankins v. NYS Dep't of Corr. Servs.*, 2008 WL 2019655, at *5 n.40 (N.D.N.Y. Mar. 10, 2008) (citing cases).  Thus, to the extent Plaintiff asserts that through Defendant Vincent's negligence, Plaintiff was denied access to the courts or denied property in violation of the First and Fourteenth Amendments, such claims must fail.

Given the evolution of Plaintiff's theory of his claim, we must also review whether his

assertion that Defendant Vincent deliberately lost or destroyed the subject legal materials violated Plaintiff's right of access to courts. In moving for summary judgment, Defendants' counsel argues that Plaintiff fails to state a claim against Defendant Vincent because he cannot show that his conduct was deliberate and malicious, thus, counsel does not address whether Plaintiff suffered any actual injury. Defs.' Mem. of Law at pp. 5-6. In support of the proposition that Plaintiff must prove a deliberate and malicious state of mind, Defendants cite to *Lewis v. Casey*, 518 U.S. 343, 349 (1996), and *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986). While it is clear from these cases that a defendant's conduct must be deliberate, as opposed to negligent, neither of these Supreme Court cases stand for the proposition that in order to deprive an inmate of access to the courts, one must have a malicious state of mind. Similarly, published decisions from the Second Circuit do not impose this extra element of maliciousness, though many district cases nonetheless have interjected it into their analysis, often erroneously citing to cases that are not supportive. *See Deleon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (no element of maliciousness included in analysis); *Morello v. James*, 810 F.2d 344 (2d Cir. 1987) (same); *Monsky v. Moraghan*, 127 F.3d 243 (2d Cir. 1997) (same); *but see Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (no element of maliciousness included in analysis, however, the court quotes a Southern District case which utilizes the term "malicious").[9] Nevertheless, the law is clear that deliberate action is required, and that is

_____

[9] In *Davis*, the Second Circuit dealt with the issue of whether interference with a prisoner's legal mail implicated a prisoner's right to access the courts. The Circuit stated the applicable law as follows:

> To state a claim for denial of access to the courts-in this case due to interference with legal mail- a plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996)); *see also Cancel v. Goord*, No. 00 Civ. 2042, 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.") (citing *Lewis*, 518 U.S. at 353, 116

(continued...)

where we begin our analysis.

In support of their request for summary judgment, Defendants provide the Court with Michael Vincent's Affidavit wherein he recounts how he accepted the documents from Plaintiff and what happened after that. Dkt. No. 50-2, Michael R. Vincent Aff., dated July 16, 2010. According to Vincent, on the date in question, he was supervising the A.P.P.U. unit, which was the program at Clinton where inmates could get their legal papers photocopied. *Id*. at ¶¶ 5-6. Upon accepting Plaintiff's documents, Vincent logged the work entry and then handed the documents to the inmate clerk who works in the program. *Id*. at ¶ 8. It was the inmate's job to copy the documents and place them into a large sealed envelope to be given back to Plaintiff. *Id*. at ¶ 9. It is Vincent's belief that, in light of the large volume of papers handled by the unit, the inmate clerk in charge of copying Plaintiff's materials "accidentally misplaced or mixed" Plaintiff's papers with another inmate's paperwork. *Id*. at ¶ 10. After learning that the documents were lost, Vincent searched, but could not find them. *Id*. at ¶ 12. These averments are mirrored in an interdepartmental memorandum, dated January 3, 2006, from Defendant Vincent regarding the loss of Plaintiff's papers. *Id*., Ex. A.

Plaintiff accuses Defendant Vincent of deliberately destroying his legal documents, though he acknowledges that he cannot prove that the documents were deliberately lost or destroyed. Pl.'s Dep. at p. 118. Nor does Plaintiff provide the Court with any facts from which any rational juror

---

[9](...continued)
S.Ct. at 2181).
*Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

It is the latter cite to *Cancel* which has caused multiple district courts to cite *Davis* for the proposition that a prisoner must show maliciousness in order to prove a claim of denial of access to courts. This Court is not clear as to whether the Circuit intended to inject this element into the analysis by quoting *Cancel*, and, if so, whether this added element is limited to claims alleging interference with legal mail. Notably, as stated above, the cases cited do not support this added element. Thus, notwithstanding the dictum in *Davis*, we follow Supreme Court precedent and published Second Circuit cases and decline to interject an added element of maliciousness into our analysis.

could find or deduce that the papers were deliberately destroyed or lost.  Instead, his theory is that

had the documents been misplaced or mixed with someone else's documents, that inmate would

have turned the papers over to him, just as he turned the papers over that were erroneously sent to

him.  *Id.* at pp. 118-19.  It is Plaintiff's opinion that because the documents were not returned to him,

and because Defendant Vincent told Plaintiff to stop filing grievances, it is clear that his documents

were deliberately lost or destroyed.  *Id.* at pp. 119-20.  He acknowledges that his documents could

have been lost by the inmate clerk, but that would be "for a jury to decide."  *Id.* at p. 120.

To defeat summary judgment, Plaintiff must do more than surmise how his documents were

lost/destroyed.  He must, at a minimum, provide some facts by which this Court could find that a

material issue of fact exists warranting a trial in this matter.  A material fact is genuinely in dispute

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Though *pro se* plaintiffs are entitled to

special latitude when defending against summary judgment motions, they must establish more than

mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir.

1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary

judgment process). Here, Plaintiff does not have any facts and simply relies on conjecture as to what

really happened to his papers.  His speculations and flawed logic, however, are not enough to raise

an issue of material fact necessary to survive Defendants' Motion.  Because Plaintiff fails to show

that Defendant Vincent deliberately interfered with his access to the courts, we need not address

whether he has shown that he suffered the requisite injury.[10]

### C.  Other Claims

In his Complaint, Plaintiff emphasized that in no way was he seeking to use his civil rights action as a means of collaterally attacking his state criminal conviction.  Compl. at p. 10.  His stated causes of action in the Complaint seem to relate solely to the constitutional viability of the photocopying services he received at Clinton.  *Id*. at pp. 9-11.  During his deposition, Plaintiff confirms that his first cause of action challenges the denial of access to the Courts.  Pl.'s Dep. at pp. 124-25.  He also extrapolated further as to how his two subsequent causes of action are distinct.  *Id*. at pp. 125-27.  Plaintiff asserted that his first cause of action "was about the access to the courts," while the second one concerns the denial of his life and liberty – "causing [him] to be in prison when [he] could've been" released.  *Id*. at p. 125.  And the third cause of action concerns the deprivation of *Brady* and *Rosario* materials that he sought to present to the trial judge.  *Id*. at p. 126.  From this testimony, Defendants infer that Plaintiff attempts to raise *Brady* and *Rosario* claims and thus seek dismissal therewith.  Dkt. No. 50-7, Defs.' Mem. of Law at pp. 8-9.

*Brady* and *Rosario* materials refer to the prosecution's obligation to disclose exculpatory evidence to a criminal defendant prior to his criminal trial.  *Brady* material, as defined under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment, including exculpatory and impeachment material.  *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("To constitute

---

[10] As an aside, we note that it is Plaintiff's theory that the two permanently missing documents were integral to Plaintiff's efforts to overturn his conviction and obtain  freedom.  *Ergo*, without these vital documents, Plaintiff is unable to effectively or, perhaps, successfully attack, either directly or collaterally, his state conviction causing him to suffer injury.  However, Plaintiff has not explained how the offered evidence would have changed the outcome of his post-conviction motions or, for that matter, his trial.  *See Herrera v. Scully*, 815 F. Supp. 713, 725 (S.D.N.Y. 1993).

*-17-*

*Brady* material, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching.") (internal quotation marks and citations omitted). *Rosario* material includes any written or recorded statement of a prosecution witness, which must be turned over to the defendant regardless of whether it is favorable to the accused. *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961); N.Y. CRIM. PROC. LAW §§ 240.44(1) & 240.45(1).

In a round-about way, it appears that Plaintiff is trying to hold Defendants responsible for losing or destroying documents he had in his possession that proved that the state prosecutor violated *Brady* and *Rosario*. This is actually part and parcel of his access to courts claim, which we have already recommended be dismissed. There is no stand-alone constitutional cause of action, cognizable under § 1983 or elsewhere in federal jurisprudence, that would allow for an inmate to sue for deprivation of *Brady* and *Rosario* materials. Both Plaintiff's second and third cause of actions, as explained through his testimony, are more properly categorized as statements regarding the injury he allegedly suffered as a result of his purported denial of access to the courts. They are not, in and of themselves, separate causes of action entitling Plaintiff to relief. Thus, to the extent Plaintiff's Complaint can be read as raising such independent claims, we recommend **dismissal**.

## D. Doe Defendant

In his Complaint, filed on September 15, 2008, Plaintiff names a John Doe Defendant, whom he identifies as the "APPU Inmate/Law Library Clerk, Clinton Correctional Facility." Compl. at p. 2. To date, Plaintiff has failed to identify this John Doe Defendant. Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days

of the filing of the complaint. FED. R. CIV. P. 4(m).[11]  Failure to properly serve any defendant in

accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to

dismiss the case without prejudice as to that defendant.  *Id.*  Because he failed to timely identify and

serve the John Doe Defendant, and because, as outlined above, no cognizable cause of action is

asserted herein, we recommend dismissal of all claims asserted against him.  *Cooks v. Delpiano*,

2008 WL 4186337, at *1 n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25,

26 (N.D.N.Y. 1998).[12]

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 50) be

**GRANTED** and this entire action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

---

[11] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

[12] Additionally, we note that there are no allegations of fact asserted against this John Doe Defendant, though it appears that this Defendant may be the inmate who assisted Defendant Vincent with the photocopying.  Section 1983 permits a plaintiff to commence suit in federal court against a "person" who has, under color of law, violated Plaintiff's federal rights.  Traditionally, the definition of acting under color of state law requires that the section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted)).  A fellow inmate could not be sued under 1983 because he lacks the requisite authority to act under color of state law.

*-19-*

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 25, 2011
           Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge